714 S.E.2d 277

ROCKVILLE HAVEN, LLC and Marc H. Merrill, Appellants,

v.

The TOWN OF ROCKVILLE and the Town of Rockville
Design Review Board, Respondents.

No. 26985.

Supreme Court of South Carolina.

Heard April 20, 2011.

Decided June 13, 2011.

John H. Tiller, J.W. Matthews III, and Denny P. Major, all
of Haynsworth Sinkler Boyd, of Greenville, for Appellants.

G. Dana Sinkler, of Warren & Sinkler, and Ross A. Appel,
both of Charleston, for Respondents.

Justice PLEICONES.

This is an appeal from a circuit court order affirming a decision by respondent Town of Rockville Design Review Board (DRB) declining to allow appellants to construct a dock and walkway for which they had obtained a permit from the South Carolina Department of Health and Environmental Control—Office of Coastal Resource Management (OCRM). Finding no evidence to support the finding that the proposed dock and walkway would impede a scenic view, we reverse.

## FACTS

Appellant Merrill obtained a dock permit from OCRM to construct a dock and walkway on property he owned in respondent Town of Rockville (Rockville).[1] He then sought approval to construct the dock from respondent DRB which, pursuant to a newly adopted municipal ordinance, had to approve the construction of any dock or walkway already permitted by OCRM.[2] The DRB declined to approve construction, and appellants appealed to circuit court.[3] The circuit court affirmed.

The Town of Rockville is listed in the National Register of Historic Places. Appellants own a historic home in Rockville, the "Whaley House." The property abuts a marsh. The OCRM permit allows appellants to build a 4' by 225' walkway across the marsh leading to a 5' by 10' pierhead, the walkway and dock to be constructed at marsh level and without handrails. The dock, at which no motorized boat may be moored, adjoins Breakfast Creek. Breakfast Creek is navigable, although this small saltwater creek west of appellants' property is frequently dry and has no deepwater access.

The DRB denied appellants permission to construct the dock, finding it contravened the guidelines in the Ordinance in several particulars, among others, that the proposed dock does

1. Merrill subsequently assigned the permit to appellant Rockville Haven, LLC.

2. *See* Rockville Town Code § 5.109 (2009); Town of Rockville Unified Dev. Ord., Appendix C.

3. *See* S.C.Code Ann. § 6–29–900 (Supp.2010).

not meet the R½ Design Review Guideline, C.2. Building Orientation, in that "proposed structures shall not impede scenic rural views from the main road, from existing structures or from natural settings" (the Guideline).

Although appellants raise numerous issues on appeal, we find it necessary to address only one:[4]

Did the circuit court err in finding evidentiary support for the DRB's conclusion that the proposed dock and walkway would impede a scenic rural view?

## ANALYSIS

The sole question before the Court is whether there is evidence that the view across the marsh from the road, admittedly both rural and scenic, would be impeded by appellants' dock and walkway. In finding evidence supporting the DRB's conclusion that it would, the circuit court relied upon the statements of two interested persons (Vinson and Brabham) at a DRB meeting, and upon aerial photographs of the area submitted at this same meeting. A close reading of the two statements reveals nothing related to the purported impediment which would be created by this proposed dock and walkway, nor do the aerial photos demonstrate that the view from the roadway would be impeded by a handrail-less dock and walkway constructed at marsh level. Moreover, the Guideline does not purport to forbid the construction of structures such docks and walkways, but simply requires that they be constructed, "where reasonably practical," so as not to obstruct scenic rural views.

Ms. Vinson spoke generally about the beauty of unspoiled places, other municipalities with dock ordinances, and warned of the dangers of allowing a dock in this area and the precedent it will set. As for this particular dock, the DRB report reflects:

There is not much to be gained by allowing this dock, a boat can't be put into it and it is not navigable[5] in her view. The

---

4. *Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 518 S.E.2d 591 (1999) (no need to address other appellate issues after deciding dispositive one).

5. OCRM found Breakfast Creek navigable, however, and there was no appeal from this finding.

property owner may be able to get a slightly different view but would not really gain a particular [sic] better one by standing on the road and looking over the marsh or from his home. The reason the ordinance was created was to protect the view.

The DRB report reflects this regarding Ms. Brabham's statements:

> She has studied this a good bit, and that she fears the precedent that would be set if a dock is built is very risky, knowing that there are other houses above [appellants'], and other small creeks (such as the creek behind her home) would also be placed at risk, thus interrupting and upsetting the scenery of the marshes of the town. You can see it from the road and other people's houses, and from experience, noting her little creek behind her home being the same as this, the OCRM did not let her know of the dock that was being built to come up right up to her marsh view ... [t]he dock stops the eye and the beautiful expanse she did have is cut off, not blocked out but cut off. "The scenic and rural views from the town that DRB is supposed to protect need to be thought about as this makes all other small creeks at risk ... I know how it looks. My main objection is the precedent of allowing the first one."

Ms. Vinson and Ms. Brabham offered no evidence that appellants' dock and walkway would impede a scenic rural view, instead raising concerns about the impact of multiple docks on such views. In addition, Ms. Brabham stated that her view was "cut off" by an existing dock, but did not suggest whether that dock had handrails or was built at marsh height. The only statement of the impact of appellants' proposed dock and walkway was given by a code enforcement officer, who acknowledged that it would "almost disappear" and be "hidden from view."

We agree with respondents that state law permits local governments to require docks and walkways comply with local laws and regulations, including those which address aesthetic concerns. Here, however, there is simply nothing in the record to support the DRB's finding, affirmed by the circuit court, that appellants' dock and walkway would impede a

scenic rural view within the meaning of the Guideline. For this reason, the decision of the circuit court is

**REVERSED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.